UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES MARYATT and KATHLEEN MARYATT, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CASUALTY COMPANY OF READING PA; FEDERAL INSURANCE COMPANY, a corporation; GRANITE STATE INSURANCE COMPANY, a corporation; PROTECTIVE NATIONAL INSURANCE COMPANY OF OMAHA, a corporation; WESTCHESTER FIRE INSURANCE COMPANY, a corporation; TRAVELERS INDEMNITY COMPANY, a corporation,<br><br>Defendants. | No. C06-5011RBL<br><br>ORDER ON DEFENDANT AMERICAN CASUALTY COMPANY OF READING PA'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR CHANGE OF VENUE |

This matter is before the Court on Defendant American Casualty Company of Reading PA's ("American Casualty") Motion to Dismiss, Motion to Strike, and Motion for Change of Venue [Dkt. #7]. American Casualty seeks to dismiss portions of Plaintiffs' complaint under the doctrine of *res judicata*, and to transfer the remaining portion of the complaint for adjudication in the Northern District of California. American Casualty also seeks to strike Charles Maryatt and Kathleen Maryatt's ("Plaintiffs") allegations of bad faith. For the reasons discussed below, these motions are GRANTED in part and DENIED in part.

ORDER     1

## FACTUAL BACKGROUND

This case concerns insurance coverage for a dry cleaning company called American Linen. American Linen was established in the 1920s, when Plaintiff Charles Maryatt's father opened shop at 771 Valley Street in Seattle, Washington ("Washington site"). In the 1940s, the company expanded its operations to open other stores, including a site in California ("California site"). When Plaintiff Charles Maryatt's father died in 1980, stock in the company transferred to Charles and his brother. In 1992, Charles' brother, David, became the sole shareholder of American Linen.

In 1992, American Linen submitted a report in compliance with Washington law to the Washington State Department of Ecology ("DOE") informing the DOE that it had discovered contamination due to past practices at its Washington site. The DOE informed the company that an owner or operator of a contaminated facility is a potentially liable person under the Washington State Model Toxics Control Act ("MTCA") and advised the company to clean up the site in accordance with applicable regulations.

In 1993, American Linen filed a lawsuit seeking a declaration that its American Casualty insurance policy[1] covered environmental liabilities arising from the Washington site. Prior to trial, the parties entered a "Confidential Settlement Agreement and Release" ("settlement agreement"). On June 28, 1994, this Court recognized the settlement agreement and dismissed the complaint with prejudice.

In the settlement agreement, the parties, American Casualty and American Linen, expressed their "desire to resolve and settle all issues of insurance coverage, defense, and indemnity among them arising from and concerning the . . . Declaratory Action, the Seattle Facility[2] . . . and any claims for insurance coverage for Site Contamination at or arising from the Seattle Facility . . . ." The agreement applies to all

---

[1] The parties do not explain when American Linen obtained this policy.

[2] This references the Washington site.

ORDER                                             2

future environmental and cleanup claims with regard to the Washington site:

> [American Casualty] and American Linen . . . do hereby release, forever discharge and covenant not to sue each other, their trustees, agents, officers, directors, attorneys, affiliated companies, predecessors, successors, and assigns, from and for all injuries, losses, liabilities or claims of any kind . . . including, but not limited to, all claims of . . . environmental damage . . . and claims of . . . clean up costs . . . [or] Site Contamination at, or in any way arising from [] the Seattle Facility . . . .

Declaration of Robert Salmon, attached as Exhibit A, at pp. 9-10.

Sometime between 1993 and 2005, Plaintiffs faced additional problems with contamination at the Washington site and tendered liability to American Casualty.[3] On November 23, 2005, in the Superior Court of California in San Mateo County, American Casualty filed a complaint for declaratory relief, seeking an answer to the question of whether Charles and Kathleen Maryatt are entitled to insurance coverage for contamination at the California site.  Discovery is underway in that case.

Plaintiffs commenced this case on December 7, 2005, in the Superior Court of Washington in Pierce County, seeking insurance coverage for contamination at the California and Washington sites. American Casualty removed the case to this Court on January 9, 2006.  Presently, Plaintiffs are officers, directors, and shareholders of American Linen.

Defendant American Casualty moves to dismiss the portion of Plaintiffs' claim regarding the Washington site and to transfer the remaining claim regarding the California site to the Northern District of California.  They also seek to strike Plaintiffs' bad faith claim.

**DISCUSSION**

**A.   Motion to Dismiss**

Defendant American Casualty moves to dismiss that portion of Plaintiffs' complaint seeking damages and insurance coverage with respect to the Washington site.  It argues that under the doctrine of

---

[3]Although Plaintiffs discuss their tender for liability with respect to the California site, neither party explains how or when Plaintiffs tendered liability to American Casualty with respect to the Washington site.

ORDER   3

res judicata, that portion of Plaintiffs' claim is barred by the parties' settlement agreement, because the settlement agreement served as a final judicial adjudication of its contractual liability for environmental contamination at the Washington site.

The doctrine of res judicata (or claim preclusion) prevents the relitigation of issues that have been settled by judicial decision. Three elements are necessary to establish a res judicata defense. There must be (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). The parties do not dispute that the first element is met. The second element is also met. Judgment based on a settlement between parties has full res judicata effect with respect to claims that were, or should have been, decided in a prior proceeding. *Hadley v. Cowan, 60 Wn. App. 433, 439, 804 P.2d 1271 (1991). See also LeBire v. Dep't of Labor & Indus.*, 14 Wn.2d 407, 418, 128 P.2d 308 (1942) ("[A] final order of judgment, settled and entered by agreement or consent of the parties, is no less effective as a bar or estoppel than is one which is rendered upon contest and trial.")

The third element, privity between parties, is disputed by the parties. Privity is defined as "the connection or relationship between two parties, each having a legally recognized interest in the same subject matter." Black's Law Dictionary (8th ed. 2004). *See also Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n. 3 (9th Cir. 2002) (quoting *In re Schimmels*, 127 F.3d at 881) ("Privity between parties exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."). Plaintiffs argue that there is no privity between Plaintiffs and American Linen because although Plaintiffs were listed as insured on the policy, they were not a party to the settlement agreement and were not shareholders at the time the agreement was finalized. American Casualty emphasizes that the settlement language encompassing the parties' "trustees, agents, officers, directors, attorneys, affiliated companies, predecessors, successors, and assigns" was designed to preclude parties asserting the same claims as those resolved in the agreement.

ORDER    4

The Court agrees that the settlement agreement precluded Plaintiffs from bringing a second insurance claim for contamination at the Washington site. The Court therefore concludes that res judicata bars Plaintiffs' claim regarding the Washington site and GRANTS American Casualty's motion to dismiss.

**B.     Motion for Change of Venue**

Defendant American Casualty moves under 28 U.S.C. § 1404(a) to transfer this action to the Federal District Court for the Northern District of California. It argues that because the California site is the only site at issue, the action should be transferred there in order to more easily and efficiently access documents and witnesses associated with the site.

Under 28 U.S.C. § 1404(a), the District Court has broad discretion to adjudicate motions for transfer according to case-by-case consideration of convenience and fairness. 28 U.S.C. § 1404(a); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). There are eight factors a court may consider when deciding whether to transfer venue:

(1) location where the relevant agreements were negotiated and executed;
(2) the state that is most familiar with the governing law;
(3) the plaintiff's choice of forum;
(4) the respective parties' contacts with the forum;
(5) the contacts relating to the plaintiff's cause of action in the chosen forum;
(6) the differences in the costs of litigation in the two forums;
(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and
(8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

In light of the fact that the Plaintiffs' remaining claim concerns damages and insurance coverage at the California site, the balance of these factors supports transfer of this action to the Northern District of California. Even though the disputed insurance policy was apparently executed in Washington with Washington residents, nearly all other witnesses and documents are likely to reside in California, the presumably applicable law of California will be more adequately adjudicated there, and the respective

ORDER                                         5

parties appear to have sufficient contacts to dispute their claims there.[4] This Court therefore concludes that transfer is appropriate and GRANTS American Casualty's motion to transfer the action.

**C.    Motion to Strike**

Plaintiffs claim that American Casualty acted in bad faith when it sought a declaratory judgment in the San Mateo County Superior Court. American Casualty moves to strike this allegation, contending that an insurer acts within its rights when it seeks a judicial declaration as to its obligations to the insured. Because this question is more appropriate for the Federal Court in California, this Court DENIES the motion.

* * *

The Court GRANTS Defendant American Casualty's Motion to Dismiss Plaintiffs' claims regarding the Washington site, GRANTS American Casualty's Motion to Transfer the remaining action regarding the California site to the Federal District Court for the Northern District of California, and DENIES American Casualty's Motion to Strike Plaintiffs' bad faith claim [Dkt. #7].

IT IS SO ORDERED.

DATED this 10th day of March, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[4] Although Plaintiffs are in their 80s, there is no evidence that they are unable to travel. If it is true that Plaintiffs have a vacation home in Southern California, that would suggest that Plaintiffs are capable of traveling to California for other purposes, including trial.